LAURIE DANIELS,

    Plaintiff,

v.                                    Civil No. 07-CV-14474

COMMISSIONER OF            DISTRICT JUDGE JULIAN ABELE COOK
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation (R&R) are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This R&R only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance, and Supplemental Security Income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkts. 8, 11.)

Plaintiff was 41 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 5 at 16, 23.) Plaintiff's relevant work history includes 6 months as a receptionist for a heating and cooling business, a year as a bookkeeper/receptionist, one year as a bartender, a year as a debt collector, 6 months in accounts receiving, and 6 months as a waitress. (Tr. at 84.)

Plaintiff filed claims on April 17 and December 15, 2003, alleging that she became unable to work on September 7, 2002. (Tr. at 16, 51-54, (DIB), 55-64 (DIB), 269-71 (SSI).) The claims were denied initially and upon reconsideration. (Tr. at 26-35, 279-82.) In denying Plaintiff's claims, the Defendant Commissioner considered affective disorders, osteoarthritis and allied disorders as possible bases of disability. (*Id.*)

On March 16, 2007, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Edward D. Steinman, who considered the case *de novo*. In a decision dated May 16, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 13-24.) Plaintiff requested a review of this decision on May 21, 2007. (Tr. at 10.)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on August 24, 2007, denied Plaintiff's request for review. (Tr. at 4-6.) On October 22,

2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *see also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of*

*Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *see also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *see also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.    Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Comm'r*, 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden

transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v) and 416.920(g)).

D.     **Administrative Record**

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that in November 1998, Plaintiff was admitted to McLaren Regional Medical Center for "major depression recurrent with suicide." (Tr. at 209-22.) Plaintiff recounted that her boyfriend had left her, and after taking an overdose of medication, she sought help at the Emergency Room. (Tr. at 216.) She recounted that she had not taken her anti-depressant medication for about three weeks. (*Id.*) Plaintiff showed improved desisionmaking during the hospitalization and was released three days after admission in improved condition, and with prescriptions for medications. (Tr. at 217.)

On May 17, 1999, Plaintiff slipped and fell and was treated at the emergency room by Michael Briggs, D.O., who ordered an x-ray of her leg. After having read the x-ray and examined Plaintiff, the doctor noted that Plaintiff had discomfort with her leg but "did not appreciate a fracture or dislocation." (Tr. at 213.) In May 2000, two views of Plaintiff's chest were taken by the Radiology Department at Lapeer Regional Hospital, both of which were normal. (Tr. at 206.)

Plaintiff underwent a hysterectomy on February 13, 2001, and was "discharged home in good stable condition." (Tr. at 200.) Plaintiff continued to seek follow up care at the McLaren Ambulatory Care Center from February through April of 2001 for possible infection, depression and having fallen when her leg/knee went out on her. (Tr. at 198-99.)

7

On April 11, 2001, Plaintiff visited McLaren Hospital complaining of chest pain, tingling in her fingers, lightheadedness, and diaphoresis. (Tr. at 194.) After testing was completed and no evidence of acute pulmonary disease was revealed, Plaintiff was asked to remain in the hospital for the "4 hour rule out," but she chose to go home instead, contrary to medical advice. (Tr. at 195-97.)

On June 9, 2003, Plaintiff underwent a mammogram which was normal. (Tr. at 179.) On June 14, 2003, Plaintiff underwent a bilateral knee x-ray revealing the only abnormality to be "minimal marginal spurring." (Tr. at 149.)

On June 15, 2003, Plaintiff was examined at the request of the Disability Determination Service by Brett Bielawski, D.O., who concluded that Plaintiff "meets the criteria for bipolar disorder" and that her knee pain is "likely osteoarthritis." (Tr. at 148.)

Plaintiff's medical records were reviewed and Residual Functional Capacity ("RFC") Assessments, both physical and mental, were performed by DDS physicians on June 17, 2003. The physical assessment concluded that Plaintiff had "mild difficulty" getting on and off the examining table, heel and toe walking, and squatting. (Tr. at 152.) The DDS physician also found that Plaintiff's knee x-rays appeared normal. (*Id.*) Finally, the examiner opined that Plaintiff's "allegations appear partially consistent with the medical evidence." (Tr. at 155.) As to the mental assessment, the DDS psychiatrist found Plaintiff was "moderately limited" in the ability to understand and remember detailed instruction, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to respond appropriately to changes in the work setting. (Tr. at 158-59.) The examining physician found that these limitations were due to bipolar disorder and he concluded that she could perform unskilled

work. (Tr. at 160.) The DDS psychiatrist also completed a Psychiatric Review Technique on June 17, 2003, wherein he concluded that Plaintiff suffered from affective disorders, revealed by Plaintiff's pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, difficulty concentrating or thinking, and hyperactivity, and that Plaintiff also suffered from bipolar disorder with psychotic features. (Tr. at 162, 165.) As to the "B" criteria, Dr. Tsai found Plaintiff to be mildly restricted in activities of daily living and moderately limited in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. at 172.)

On March 17, 2004, Plaintiff underwent a psychiatric evaluation conducted at the request of the Disability Determination Service by Dr. Marianne Goergen, Psy. D., who concluded that Plaintiff has a "recurrent moderate" "major depressive disorder." (Tr. at 225-26.) Dr. Goergen noted that Plaintiff had "stopped taking her medication and does not appear trustworthy of the mental health professionals." (Tr. at 226.)

Plaintiff underwent a second mental RFC on April 1, 2004. (Tr. at 241-44.) Plaintiff was found to be moderately limited in her ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to set realistic goals or make plans independently of others. (Tr. at 241-42.) The DDS psychiatrist also found that Plaintiff was moderately limited in sustained concentration and persistence "due to depressive episodes," but concluded that "claimant is capable of a wide range of simple, unskilled tasks." (Tr. at 243.)

On April 9, 2004, a consultative physical examination was performed by Richard Kovan, M.D., who concluded that Plaintiff has a "reduced active range of motion of both knees [but] [o]therwise d[id] not find any other evidence of neurological or orthopedic impairment." (Tr. at

9

246.) He also noted that Plaintiff is "morbidly obese." (*Id.*)[2] Plaintiff's knee flexion was 135 degrees in the right knee and 145 degrees in the left, with the normal range being 0-150 degrees. (Tr. at 249.) Plaintiff was also found to have the ability to stand, stoop, bend, carry, push, pull, etc., with the only exception being her ability to squat and rise. (Tr. at 250.) Plaintiff was also able to walk on her heels and her toes and there was no evidence of any need for a walking aid. (Tr. at 251.)

On April 19, 2004, another physical RFC was performed on Plaintiff where it was concluded that Plaintiff could occasionally lift up to 50 pounds, frequently lift up to 25 pounds, stand or walk for 6 hours in an 8-hour workday, and that Plaintiff was unlimited in her ability to push or pull. (Tr. at 253.) The DDS physician noted that knee x-rays revealed "mild arthritic/degenerative findings involv[ing] the right knee" and that the consultative examination performed on April 9, 2004, had shown Plaintiff was able to walk on her heels and toes, had a normal gait, but had "discomfort [in her] left knee" when squatting. (Tr. at 253-54.) The assessment also concluded that Plaintiff is occasionally limited in her ability to climb, balance, stoop, kneel, crouch, and crawl. (Tr. at 254.) Finally, the DDS physician found Plaintiff's statements to be "partially credible" and that there were not treating source statements regarding Plaintiff's physical capacities in the file. (Tr. at 257-58.)

In February of 2007, Dennis Lloyd, D.O., completed a medical source statement wherein he concluded that Plaintiff is moderately limited in her ability to relate and interact with supervisors and co-workers, the ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions, markedly limited in the ability to handle funds, and

---

[2] At the time of the evaluation, Plaintiff weighed 293 pounds; she stands five feet, five inches tall. (Tr. at 245.)

extremely limited in the ability to understand, remember, and carry out one- or two-step job instructions, the ability to deal with the public, the ability to maintain concentration and attention for at least two hour increments, and the ability to withstand the stress and pressures associated with an eight-hour work day and day-to-day work activity. (Tr. at 260.) He also concluded that Plaintiff could occasionally lift/carry/upward-pull less than 10 pounds for one third of an eight-hour day, frequently lift less than ten pounds for one third to two thirds of an eight-hour day, stand/walk for less than two hours in an eight-hour day, that Plaintiff must alternate between standing and sitting throughout the day, and that Plaintiff has "severe" limitations in pushing and pulling in both left and right upper and lower extremities. (Tr. at 261.)

Plaintiff underwent another consultative mental examination conducted at the request of the DDS physician by Matthew P. Dickson, Ph.D., a licensed psychologist, on April 11, 2007. (Tr. at 262-65.) He diagnosed Plaintiff with "bipolar disorder NOS," "(cluster B) Personality Disorder NOS Features," knee, ankle and joint issues, and a GAF of 58. (Tr. at 265.) Dr. Dickson also completed a medical source statement regarding Plaintiff on April 11, 2007, wherein he found Plaintiff moderately limited in her ability to interact appropriately with the public, mildly limited in her ability to interact appropriately with supervisors and co-workers, and mildly limited in her ability to respond appropriately to usual work situations and changes in a routine work setting. (Tr. at 267.)

### E.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since September 7, 2002, the alleged onset date. (Tr. at 18.) At step two, the ALJ found that Plaintiff's impairments, history of chronic bilateral knee pain, morbid obesity, and bipolar disorder with psychotic features,

were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 19.) At step four, the ALJ found that Plaintiff could not perform her past relevant work. (Tr. at 22.) At step five, using the Commissioner's grid rules as a guide, the ALJ denied Plaintiff benefits because he found that Plaintiff has the residual functional capacity to perform a full range of light work and he thus concluded that Plaintiff remains able to perform a significant number of jobs available in the national and regional economy, such as iron zipper and blending tank tender helper. (Tr. at 23-24.)

### F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to perform light work. (Tr. at 23-24.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, I suggest the substantial evidence supports the findings of the ALJ. Plaintiff first argues that the hypothetical used by the ALJ was inaccurate because it did not properly include the medical opinion of Dr. Lloyd. (Dkt. 8 at 6-12.) Plaintiff contends that the ALJ "made a blanket conclusion" that Dr. Lloyd was not well-supported by medically acceptable clinical techniques and diagnostic studies and that Dr. Lloyd had given "no basis" for the limitations he applied to Plaintiff and that this blanket conclusion is not sufficient to discount the treating physician's opinion. (Dkt. 8 at 12; Tr. at 22.)

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007) (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996); *see also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

The ALJ's decision to give Dr. Lloyd's opinion less weight than that ordinarily accorded treating physicians was, I suggest, not a "blanket conclusion." Rather, it was made in light of the

medical evidence of the whole record, much of which contradicted Dr. Lloyd's conclusions, especially the x-rays of the knees which showed only minimal spurring and the findings of Brett Bielawski, D.O. (Tr. at 22.) I further suggest that there is no medical evidence in the record to support limitations of any significance in Plaintiff's upper extremities, yet Dr. Lloyd found Plaintiff to have "severe" limitations in both her upper extremities. (Tr. at 261.) I therefore suggest that the ALJ's decision to give Dr. Lloyd's opinion, which is inconsistent with the substantial medical evidence of record, less weight than is ordinarily accorded to a treating physician was proper.

In addition, Plaintiff argues that Defendant erred as a matter of law by failing to follow Social Security Rule (SSR) 00-4p, which requires the ALJ to ask the Vocational Expert (VE) if the evidence conflicts with information provided in the Dictionary of Occupational Titles (DOT). (Dkt. 8 at 13-16.) SSR 00-4p is titled "resolving conflicts in occupational information," and is for use "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT." In this case, the ALJ made an express finding in his decision that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (Tr. at 23.) I suggest that here, where there is no unresolved conflict, the ALJ's failure to ask the VE whether his testimony is consistent is not reversible error or even error requiring remand. *See Rowe v. Astrue*, No. 07-348-JMH, 2008 WL 1711538, at *3 (E.D. Ky. Apr. 10, 2008) (where hypothetical accurately reflected plaintiff's limitations and ALJ was unaware of any conflict, ALJ was under no duty to explain how conflict was resolved); *Winstead v. Comm'r*, No., 2008 WL 819073, at *15-16 (S.D. Ohio Mar. 25, 2008) (where question posed to VE accurately reflected plaintiff's limitations, plaintiff's contention that ALJ erred in failing to inquire into possible conflicts was without merit).

In this case, the VE who testified at the administrative hearing responded to a series of hypothetical questions from the ALJ based upon information provided in the DDS RFC assessments, and presuming a younger person with the ability to do unskilled medium work, then light work, and then sedentary work. (Tr. at 304-07.) The VE testified to the significant numbers of jobs available regionally and nationally in response to each of these hypotheticals, citing the specific DOT code numbers for these jobs. (*Id.*) The ALJ also asked the VE a hypothetical including the need for a sit/stand option, and a non-public job with limited contact with peers and supervisors. The VE testified that the light-work jobs of iron zipper and blending tank helper would remain appropriate and that they existed in significant numbers in the national and regional economy. (Tr. at 307.)

I therefore suggest that the VE's opinions are consistent with the medical evidence of record, and thus can properly be considered substantial evidence supporting the ALJ's findings. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). These opinions came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence as presented by Plaintiff's treating and examining physicians.

Turning specifically to Plaintiff's allegations of disabling mental impairments, I suggest that the ALJ properly discounted the opinions of Dr. Lloyd. (Tr. at 21.) While accurately noting that Dr. Lloyd is a treating physician, the ALJ was entirely correct that the doctor was not a mental health specialist and that he had not supported his opinions as to Plaintiff's mental condition with either cognitive testing or the assignment of a Global Assessment of Functioning (GAF) score.

16

(*Id.*) The ALJ's findings as to Plaintiff's mental condition is consistent with the two mental health professionals who examined Plaintiff, as well as the daily activities described by Plaintiff herself, i.e., that she watches television, prepares her own meals, does her own laundry, washes dishes, sweeps the floor, drives a car, and shops for groceries. (Tr. at 77-79.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                    s/ *Charles E Binder*
                                                            CHARLES E. BINDER
Dated: July 21, 2008                                United States Magistrate Judge

### **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson, Mikel Lupisella, and the Commissioner of Social Security, and served on U.S. District Judge Cook in the traditional manner.

Date:  July 21, 2008             By      s/Patricia T. Morris
                                                    Law Clerk to Magistrate Judge Binder